OPINION OF THE COURT
 

 Jasen, J.
 

 The question before us is whether a policy of profes
 
 *396
 
 sional liability insurance issued by plaintiff affords coverage to a dentist in a civil suit commenced by a former patient grounded upon an act of sexual abuse alleged to have occurred in the course of dental treatment.
 

 Plaintiff Public Service Mutual Insurance Company, a multiline insurer, issued a “Dentist’s Professional Liability Policy” to the Dental Society of the State of New York. Defendant, Saul Goldfarb, a member of the society, obtained coverage under that policy. Defendant Jacqueline P. Schwartz is a former patient of Dr. Goldfarb who received dental treatment from him on May 23, 1977. She claims that in the course of receiving such treatment, she was sexually abused by Dr. Goldfarb. This claim, which is the subject of a pending civil suit, also formed the basis of professional disciplinary proceedings against Dr. Goldfarb and resulted in a criminal conviction of the crime of sexual abuse in the third degree (Penal Law, § 130.55). In this declaratory judgment action, plaintiff has asked the court to determine whether its policy of insurance provides coverage for the civil claim seeking compensatory and punitive damages.
 

 Special Term held that no coverage was provided. The court found that the acts complained of by Jacqueline Schwartz were never intended to fall within the protective scope of the professional liability policy because they were undertaken for the personal satisfaction of the practitioner and not in the course of proper dental treatment. The Appellate Division, First Department, reversed, noting that the policy specifically provided coverage for “assault” and “undue familiarity” as well as for dental malpractice. The court concluded that this broad langague indicated an intent that a claim based upon sexual abuse in the course of treatment be covered and that the insurer would be liable for both compensatory and punitive damages. Two Justices dissented, however, taking the view that no coverage for punitive damages was allowable because any award for such damages would contravene public policy.
 

 On this appeal, plaintiff argues that its policy of insurance was not intended by the parties to provide coverage against a claim of sexual abuse and that, in any event, no
 
 *397
 
 adequate notice of claim was given to the insurer by defendant Goldfarb as required by the terms of the policy. It is further argued that even if, as a contractual matter, coverage exists, it should not be enforced in this case because the public policy of this State does not allow contractual indemnification for civil liability which arises out of the commission of a crime.
 

 Defendant argues that the broad language of the insurance policy in issue specifically provides coverage for a claim of sexual abuse in the course of dental treatment and that he has provided adequate notice of claim in accordance with the terms of the policy. He further argues that where, as here, the policy explicitly provides coverage, such protection should not be denied upon public policy grounds.
 

 The first question which must be addressed is whether the policy of insurance in issue contractually obligated plaintiff to defend and to indemnify Dr. Goldfarb for the claim made by defendant Schwartz. If there is no such contractual obligation, then no question of public policy need be decided. In order to resolve this issue, we must determine first whether adequate notice of claim was given to the insurer and, second, whether such a claim falls within the protective scope of the policy.
 

 We agree with the courts below that Dr. Goldfarb timely notified plaintiff of the existence of defendant Schwartz’ claim against him. The policy required the insured to notify the company as soon as possible “in the event of an accident, unusual occurrence or receiving notice of claim or suit”. Plaintiff contends that the commencement of disciplinary and criminal proceedings against defendant Goldfarb were “unusual occurrences” within the meaning of the policy which triggered the requirement of notice. We cannot agree.
 

 Although Dr. Goldfarb was aware long before Schwartz’ lawsuit was commenced that the propriety of his conduct was in issue, he had no knowledge that any civil claim would be brought against him until he was served with process by defendant Schwartz. When the lawsuit was commenced, he promptly advised his insurer of the pending claim in ac
 
 *398
 
 cordance with the express language of the insurance contract which, as noted earlier, required such notice upon the happening of an unusual occcurrence “or [upon] receiving notice of claim or suit”. Defendant complied with the literal requirements of the policy. That the provisions of the policy could be read to require earlier notice is beside the point. The term “unusual occurrence” is, at best, ambiguous, and any ambiguity in the policy must be resolved against the insurer. (See
 
 Public Serv. Mut. Ins. Co. v Levy,
 
 57 AD2d 794.)
 

 We also agree, as did the majority and the dissenters below, that the insurance policy in issue was intended by the parties to provide coverage for liability arising out of the acts complained of by defendant Schwartz. The policy specifically states that the insurer will" “pay on behalf of the Insured named in this certificate all sums, including punitive damages, which the Named Insured shall become obligated to pay by reason of the liability imposed upon him by law for damages because of injury resulting from professional dental services rendered * * * and resulting from any claim or suit based upon * * * [m]alpractice, error, negligence or mistake, assault, slander, libel [or] undue familiarity”. This language clearly indicates an intent on the part of the insurer to pay both compensatory and punitive damages arising out of unlawful or inappropriate physical contact which occurs during the course of dental treatment. Defendant Schwartz claims that such contact occurred. Hence, as a purely contractual matter absent any consideration of public policy, a claim within the stated coverage has been made and the insurer is obligated to defend the suit.
 

 Whether indemnity will ultimately be required, however, cannot be determined at this stage of the proceeding. It is possible, of course, that the trier of fact could find that unlawful contact with defendant Schwartz occurred, but that it did not occur in the course of professional dental services. In this event, defendant Schwartz could recover from defendant Goldfarb, but he, in turn, could not seek contractual indemnity from his insurer because the policy imposes liability upon the insurer only for “injury result
 
 *399
 
 ing from professional dental services rendered”. This being so, any determination as to whether the insurer must indemnify Dr. Goldfarb must await a trial of defendant Schwartz’ claim, at which time a special verdict should be obtained on the issue of whether or not the acts complained of occurred in the course of professional dental treatment. (Cf.
 
 Utica Mut. Ins. Co. v Cherry,
 
 45 AD2d 350, 355, affd 38 NY2d 735.)
 

 Having determined that plaintiff has contractually obligated itself at least to defend Dr. Goldfarb against the claim in issue, we must now address the question whether the public policy of this State precludes insurance coverage for a claim of sexual abuse in the course of dental treatment. Plaintiff notes that defendant was convicted of the crime of sexual abuse in the third degree and argues that, as a matter of public policy, he may not be indemnified for any civil liability arising out of this criminal act. We disagree. The mere fact that an act may have penal consequences does not necessarily mean that insurance coverage for civil liability arsing from the same act is precluded by public policy. (See
 
 Messersmith v American Fid. Co.,
 
 232 NY 161, 163-165; cf.
 
 Miller v Continental Ins. Co.,
 
 40 NY2d 675.) Whether such coverage is permissable depends upon whether the insured, in committing his criminal act, intended to cause injury. One who intentionally injures another may not be indemnified for' any civil liability thus incurred. However, one whose intentional act causes an unintended injury may be so indemnified.
 
 (Messersmith v American Fid. Co.,
 
 232 NY 161,
 
 supra.)
 

 In this case, the complaint against Dr. Goldfarb alleges both intentional acts which caused unintended injury, seeking compensatory damages therefor and intentional causation of injury, seeking compensatory and punitive damages therefor. To the extent that defendant Schwartz’ complaint can be construed as a claim for injuries unintentionally caused by Dr. Goldfarb, he may seek indemnity from his insurer for that claim. Thus, the insurer would be obligated to pay any judgment against Dr. Goldfarb for compensatory damages only, assuming, of course, that the
 
 *400
 
 trier of fact determined, in a special verdict, that such unintended injury occurred in the course of dental treatment.
 

 Under no circumstances, however, can the insurer be compelled to indemnify Dr. Goldfarb for punitive damages. Such damages are, as the name implies, a punishment for intentional wrongdoing. As we have only recently noted, to allow insurance coverage for such damages “is totally to defeat the purpose of punitive damages”
 
 (Hartford Acc. & Ind. Co. v Village of Hempstead,
 
 48 NY2d 218, 228). Nor should such indemnity be allowed because the insurer specifically agreed to provide such coverage and charged a premium for such coverage. An agreement between two private parties, no matter how explicit, cannot change the public policy of this State. Therefore, should the trier of fact at the trial of the Schwartz claim determine that defendant Goldfarb intentionally caused the injuries of which Jacqueline Schwartz complains, and award punitiv damages therefor, Dr. Goldfarb may not look to his insurer to indemnify him for such damages.
 

 Furthermore, if a finding that defendant Goldfarb
 
 intended to injure
 
 defendant Schwartz is made in a special verdict, he would be precluded from seeking indemnity from his insurer for either compensatory or punitive damages flowing from this intentional causation of
 
 injury.
 
 This is so because to allow such indemnity would be to violate the “fundamental principle that no one shall be permitted to take advantage of his own wrong”.
 
 (Messersmith v American Fid. Co.,
 
 232 NY 161,165,
 
 supra.)
 
 We emphasize, however, that if punitive damages are awarded on any ground other than intentional causation of
 
 injury
 
 — for example, gross negligence, recklessness or wantonness — indemnity for compensatory damages would be allowable even though indemnity for the punitive or exemplary component of the damage award would be barred as violative of public policy. (See Liability Insurance As Covering Accident, Damage, or Injury Due to Wanton or Wilful Misconduct or Gross Negligence, Ann., 20 ALR3d 320, 331-333.) Where no finding of an intent to
 
 injure
 
 has been made, nothing in the public policy of this State precludes indemnity for com
 
 *401
 
 pensatory damages flowing from a defendant’s volitional act. Since the insurance contract in issue expressly provides coverage for such volitional acts in the course of dental treatment, the insurer must be held to the bargain which it struck with the insured, absent an express reservation or exclusion to the contrary. (Cf.
 
 Carlson v Travelers Ins. Co.,
 
 35 AD2d 351, 355.)
 

 We note also that although the insurer need not indemnify Dr. Goldfarb for any liability for punitive damages, it must, nonetheless, defend him in the pending lawsuit because a claim within the stated coverage has been made. Moreover, inasmuch as the insurer’s interest in defending the lawsuit is in conflict with the defendant’s interest— the insurer being liable only upon some of the grounds for recovery asserted and not upon others — defendant Goldfarb is entitled to defense by an attorney of his own choosing, whose reasonable fee is to be paid by the insurer.
 
 *
 

 (Hartford Ace. & Ind. Co. v Village of Hempstead,
 
 48 NY2d 218, 228-229,
 
 supra; Prashker v United States Guar. Co.,
 
 1 NY2d 584, 593; see, also,
 
 Parker v Agricultural Ins. Co.,
 
 NYLJ, June 23, 1981, p 6, col 1.)
 

 In sum, we hold that plaintiff is obligated to defend Dr. Goldfarb in the lawsuit commenced by defendant Schwartz and to provide independent counsel for the defense, to be chosen by Dr. Goldfarb. At this stage of the litigation, however, it is impossible to determine whether any indemnity for any compensatory damages which ultimately may be assessed against Dr. Goldfarb will be required, for such a
 
 *402
 
 determination can only be made after the trier of fact in the Schwartz action has rendered its special verdict.
 

 Accordingly, the order of the Appellate Division should be modified, with costs, by deleting therefrom so much of the order as declares that plaintiff must indemnify defendant Goldfarb for any liability arising out of the lawsuit against him by defendant Schwartz and by substituting therefor a provision dismissing as premature so much of plaintiff’s complaint as seeks a declaration with respect to indemnity. The order should be further modified to include a declaration that plaintiff is required to defend defendant Goldfarb in respect of the claim of defendant Schwartz and must pay a reasonable fee for separate counsel of defendant Goldfarb’s choosing to defend him. As so modified, the order of the Appellate Division should be affirmed.
 

 Chief Judge Cooke and Judges Gabrielli, Jones, Wachtler, Fuchsberg and Meyer concur.
 

 Order modified, with costs to plaintiff, in accordance with the opinion herein and, as so modified, affirmed.
 

 *
 

 That is not to say that a conflict of interest requiring retention of separate counsel will arise in every case where multiple claims are made. Independent counsel is only necessary in cases where the defense attorney’s duty to the insured would require that he defeat liability on any ground and his duty to the insurer would require that he defeat liability only upon grounds which would render the insurer liable. When such a conflict is apparent, the insured must be free to choose his own counsel whose reasonable fee is to be paid by the insurer. On the other hand, where multiple claims present no conflict — for example, where the insurance contract provides liability coverage only for personal injuries and the claim against the insured seeks recovery for property damage as well as for personal injuries — no threat of divided loyalty is present and there is no need for the retention of separate counsel. This is so because in such a situation the question of insurance coverage is not intertwined with the question of the insured’s liability.