[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff brings this action to resolve the issue of the coverage of certain insurance policies issued by plaintiff to the defendant. The action seeks a declaratory judgment from the court in the form of answers to two specific questions (see Complaint of December 13, 1990).
(1) Is the defendant, Shernow, entitled to indemnification under insuring agreement 42 for the damages awarded to the intervening defendant, Sciola, in Sciola v. Shernow?
(2) Is the defendant, Shernow, entitled to indemnification under insurance agreement 51?
The plaintiff is the insurance company which issued both policies at issue. The defendant, Shernow, was a dentist who was sued successfully by the intervening defendant, Sciola, for an intentional assault of a sexual nature and medical negligence or malpractice. Insuring agreement 42 is a professional liability policy issued to the defendant, Shernow, as a practicing dentist. Insurance agreement 51 is an office liability policy issued to the defendant, Shernow.
The facts of the underlying Sciola v. Shernow action are set CT Page 2424 forth in the Appellate Court's review of that case in 22 Conn. App. 351
(1990). The transcript of the Sciola v. Shernow trial Docket No. ___ was also presented as an exhibit in this proceeding.
The Appellate Court concluded that the jury could reasonably have found the following facts:
 The defendant had been the plaintiff's dentist for over ten years and had consistently advised her that nitrous oxide was the appropriate means of sedation for her during treatment. On April 19, 1984, the plaintiff visited the defendant's office to have a molar filled. Before beginning any dental work on the plaintiff, the defendant administered nitrous oxide to her. He did this without first checking to see if she was on any medication that would conflict with the nitrous oxide. He also administered a dangerously high concentration of the gas and kept her under its effect more than twice the usual length of time. In addition, the defendant had not checked the accuracy of the machine with which he administered the gas for at least three years.
 When the nitrous oxide had been administered to the plaintiff in the past, she felt mildly dazed, but completely aware of her surroundings. When the nitrous oxide was administered on this occasion she heard a loud ringing noise, felt as if her head was flying up to the ceiling and then lost consciousness. During the course of the one hour and fifteen minutes she was under the effects of the gas she regained consciousness three times. On the first occasion she felt the defendant's tongue in her mouth and experienced pain in her breasts. When she attempted to resist the defendant she observed him turning up the concentration of nitrous oxide and again lost consciousness. CT Page 2425
 She awoke a second time to find the defendant on top of her. She was having difficulty breathing, the defendant's tongue was in her mouth and she was experiencing pain in her breasts. Once again she attempted to resist the defendant and saw him turn up the gas. The painful ringing returned to her ears and she once again slipped into an unconscious state.
 The third time the plaintiff regained consciousness, she kept her eyes closed so the defendant would not turn up the gas again. At this time, the defendant was still on top of her, and his tongue was in her mouth. She was frightened and felt violently ill. Once the defendant realized that she was awake he assisted her out of the chair. He then approached her from behind grabbed her breasts and kissed her neck. She was aware that he had an erection at this time. She did not recall any dental work being performed during the entire course of this visit.
 The plaintiff was disoriented when she left the defendant's office. She was nauseated and experienced a burning sensation in her nose, throat palate and chest. She had a severe headache, her breasts were sore and she felt violated. After she was home, one side of her nose bled periodically.
 Four days after the incident, the plaintiff visited her family physician. She was still suffering from headaches, her breasts were bruised and she was lethargic. The burning sensation in her throat and chest persisted and her nausea continued. She was referred to a pulmonary specialist who concluded that during her excessive exposure to nitrous oxide she had aspirated stomach acid into her lungs which left her with a permanent asthma condition and a permanent loss of 35 to 40 percent of her lung capacity. CT Page 2426
 The plaintiff also was seen by a psychiatrist who determined that she suffered from a posttrauma stress disorder. He further concluded that as a result of the events of April 19, 1984, she has a phobia of medical and dental personnel, and suffers from periodic sleeplessness, depression, fearfulness, and heightened anxiety. In addition, her sense of self-reliance, her self-image and her ability to interact effectively with males has been impaired.
 Before this incident, the plaintiff was the lead singer in her own six piece band and a professional entertainer. Since the incident, her income has been significantly reduced due to her diminished lung capacity and endurance.
 After hearing the above evidence, the jury returned a plaintiff's verdict awarding her $300,000 in general damages and $100,000 in punitive damages. The defendant submited interrogatories to the jury and it responded with the damages that it had assigned to each count. On a separate sheet of paper the jury indicated that it had found a plaintiff's verdict and a total damage award of $400,000.
The plaintiff claims that neither policy entitles the defendant, Shernow, to indemnification under these facts. The intervening defendant, Sciola, and the defendant Shernow argue that the professional liability policy covers this scenario; but if it doesn't, then the office liability policy must apply.
THE PROFESSIONAL LIABILITY POLICY
Professional liability insurance policies typically, as in this case, cover damages resulting from the providing or withholding of professional services. Not all the actions of the covered physician are covered by such policies only those actions which are encompassed within professional services.
There are a surprising number of cases in which the appalling scenario of the provider of medical services employing drugs, CT Page 2427 anesthesia or therapeutic means to overcome the patient's resistance to sexual assault occurs. Hirst v. St. Paul Fire 
Marine Ins. Co., 106 Idaho 792, 683 P.2d 440 (1984); Smith v. St. Paul Fire Marine Ins. Co., ___ Minn. ___, 353 N.W.2d 130
(1984); South Carolina Medical Malpractice Liability Insurance J.U.A. v. Ferry, 354 S.E.2d 378 (S.C. 1987); Standard Fire Ins. Co. v. Blakeslee, 54 Wash. App. 1, 771 P.2d 1172 (1989); St. Paul Fire Marine v. Quintana, 165 Mich. App. 719, 419 N.W.2d 60
(1988); St. Paul Fire Marine Ins. Co. v. Asbury, 149 Ariz. 565,720 P.2d 540 (1986); Vigilant Insurance Co. v. Kambly,319 N.W.2d 382 (Mich.App. 1982); Vigilant Insurance Co. v. Employees Insurance of Wausau, 626 F. Sup. 262 [S.D.N.Y.]; Public Service Ins. v. Goldfarb, 425 N.E.2d 810, 53 N.Y.2d 392, (1981); Aetna Life Casualty v. McCabe, 556 F. Sup. 1342 (E.D. Pa. 1983); Cotton v. Kambly, 101 Mich. App. 537 300 N.W.2d 627 (1981); Wall, v. Noble, 705 S.W.2d 727 (Tex. 1986).
Ms. Sciola, the patient-victim of Dr. Shernow, in addition to the trauma and violation of sexual assault, suffered serious medical injuries relating to the negligent administration of nitrous oxide. The asthmatic condition and loss of lung capacity were the result of aspiration of stomach acid during the excessive exposure to nitrous oxide.
The patient's injuries relating to the administration of nitrous oxide and the relation of the nitrous oxide to the dental treatment clearly distinguishes this case from Hirst v. St. Paul Fire Marine Ins. Co., supra where the court specifically noted that the physician's use of drugs was not related to the treatment of patient's injuries, and caused the patient no damage.
Plaintiff, as it must, concedes that there is no reported case where the patient suffered damages from the medical procedure used in advancing the assault; where professional liability coverage was not found.
Ms. Sciola had been treated by Dr. Shernow for approximately ten years during which she was sedated with nitrous oxide for her dental treatment.
The jury in the Sciola v. Dr. Shernow trial answered the series of interrogatories as follows:
 3. Did the Defendant, Robert Shernow, D.D.S., breach the standard of care in providing professional treatment to the Defendant, Mary Lou Sciola, as alleged in the Second Count of Plaintiff's Complaint? If your response to this interrogatory is "no" do not CT Page 2428 proceed to the following interrogatories and return a verdict in favor of the Defendant, Robert Shernow, D.D.S. on the Second Count of Plaintiff's Complaint. If your response to this interrogatory is in the affirmative, proceed to the next interrogatory.
ANSWER: YES X NO
 4. Although we, the jury, find that Robert Shernow breached the standard of care in providing professional treatment to Mary Lou Sciola, we do/do not find that the Plaintiff, Mary Lou Sciola, suffered damage proximately caused by this breach of the applicable standard of care. If the answer to this interrogatory is in the negative, proceed no further. If the answer to this interrogatory is in the affirmative, proceed to the following interrogatory.
ANSWER: Do X Do not
 5. What damages do you find the Plaintiff suffered as alleged in Count Two of Plaintiff's Complaint.
ANSWER: $300,000.00
The evidence in support of the finding of medical negligence or malpractice included testimony of over a one hour period of administration of nitrous oxide, (more than twice the usual period), no inquiry about other drug or medication use prior to its administration, a failure to monitor the nitrous oxide machine in the years, and the administration of a dangerously high concentration of nitrous oxide.
"The trial court must construe an insurance policy, like any other contract, in a reasonable way, giving words their common, ordinary and customary meaning." St. Paul Fire Marine Ins. Co. v. Shernow, 22 Conn. App. 377, 382 (1990); Gottesman v. Aetna Ins. Co., 177 Conn. 631, 634, 418 A.2d 944 (1979). "In a case involving the question of indemnity, the court must determine whether the coverage in question in fact exists." St. Paul Fire 
Marine Ins. Co. v. Shernow, 22 Conn. App. 377, 382 (1990); Izzo v. Colonial Penn Ins. Co., 203 Conn. 305, 309, 524 A.2d 641 (1987). CT Page 2429
The jury in Sciola v. Shernow not only answered the special interrogatories that were submitted to it favorably to Ms. Sciola, but returned a general verdict for her as well. "A general verdict for one party raises a presumption that the jury found every issue in favor of the prevailing party. Alfano v. Insurance Center of Torrington, 203 Conn. 607, 613, 525 A.2d 1338 (1987); Holbrook v. Casazza, 204 Conn. 336, 345, 520 A.2d 774 (1987), cert. denied, 484 U.S. 1000, 108 S.Ct. 699, 98 L.Ed.2d 651
(1988); Finley v. Aetna Life Casualty Company, 202 Conn. 190,203 (1987).
Dr. Shernow in providing professional services to Ms. Sciola engaged in medical negligence or malpractice to her damage. Coverage under the plaintiff professional liability insurance policy covers such furnishing of professional services.
The plaintiff is not relieved of its contractual obligation by the fact that its insured was simultaneously intentionally sexually assaulting his anesthesized patient. The use of nitrous oxide was an element of the ongoing course of dental treatment and it was administered in a marked departure from the minimal standards of medical practice.
The indemnification of the defendant, Shernow, under these circumstances does not offend public policy. In an analogous case, the New York Court of Appeals held: "where no finding of an intent to injure has been made, nothing in the public policy of this state precludes indemnity for compensatory damages flowing from a defendant's volitional act." Public Services v. Goldfarb,53 N.Y.2d 392, 425 N.E.2d 810 at 815 (1981). Goldfarb involving sexual abuse during the course of dental treatment, was presented on the declaratory judgment coverage issue prior to the trial of the patient's claim against the insured dentist. The claims considered were as here alternatively intentional assault with intentional causation of injuries; and acts of sexual assault using medical procedure resulting in unintended injuries.
The Michigan Court of Appeals also refused to read in a public policy exclusion to a professional liability insurance claim of a psychiatrist accused of abusing the therapeutic relationship to sexually abuse a patient, Vigilant Insurance Company v. Kambly, 114 Mich. App. 683, 319 N.W.2d 382 (1982). The Michigan Court of Appeals believed that public policy was barely implicated since "coverage does not allow the wrongdoer unjustly to benefit from his wrong. It is not the insured who will benefit, but the innocent victim who will be provided compensation for her injuries."
Courts have also recognized that where the professional services were intertwined with tortious sexual abuse, coverage CT Page 2430 should apply under professional liability insurance, St. Paul Fire Marine Insurance Company v. Asbury, 149 Ariz. 565, 720 P.2d 540
(1986). Asbury presented the case of a gynecologist who in the cause of a gynecological examination manipulated his patient's clitoris for his sexual purposes. Also, see St. Paul Fire 
Marine Insurance Company v. Love, 447 N.W.2d 5 (Minn.App. 1989) affirmed 459 N.W.2d 698 (Minn. 1990) in which professional liability insurance covered psychologist's negligence in handling the transference phenomenon of analytical therapy, by entering into a sexual relationship with the patient.
For the reasons as stated above, the court's answer to the first question is in the affirmative.
THE OFFICE LIABILITY POLICY
In view of the court's resolution of the first question, the answer to the second logically follows.
The office liability policy specifically excludes "professional service" by maintaining "We won't cover injury or damage caused by the providing or withholding of any professional service."
Plaintiff and defendants agree, as they must, that the finding of coverage under the professional liability policy requires a subordinate finding that the damage or injury was caused by the providing or withholding of professional service.
The answer to the second question is thus in the negative.
A declaratory judgment is a suitable, and here the appropriate vehicle to determine the rights and liabilities under an insurance policy. Shelby Mutual Ins. Co. v. Williams,152 Conn. 178, 179; 205 A.2d 372 (1964); St. Paul Fire Marine Ins. Co. v. Shernow, 22 Conn. App. 377, 382 (1990).
DECLARATORY JUDGMENT
(1) Is the defendant, Shernow, entitled to indemnification under insuring agreement 42 for the damages awarded to the intervening defendant, Sciola, in Sciola v. Shernow?
Yes
(2) Is the defendant, Shernow, entitled to indemnification under insurance agreement 51?
No
McWEENY, J. CT Page 2431