Live Invest, Inc., Plaintiff,

against
Clifford Morgan, Gamma Enterprises LLC, Alpha Direct Marketing LLC and Jericho Capital Corp., Defendants.

Jericho Capital Corp., Third-Party Plaintiff,
against
Gamma Enterprises, LLC, d/b/a Gamma Labs, Third-Party Defendant.

605639-15

Frenkel Lambert Weiss Weisman & Gordon, LLP
Attorneys for Defendant/Third-Party Plaintiff Jericho Capital Corp.
One Whitehall Street, 20th Floor
New York, New York 10004
Lax & Neville LLP
Attorneys for Third-Party Defendant
1450 Broadway, 35th Floor
New York, New York 10018


Elizabeth H. Emerson, J.

Upon the following papers read on this motion to dismiss ; Notice of Motion and supporting papers 133-135; 125-127 ; Notice of Cross Motion and supporting papers; Answering Affidavits and supporting papers 136 ; Replying Affidavits and supporting papers137 ; it is,
ORDERED that this motion by the third-party defendant, Gamma Enterprises, LLC, d/b/a Gamma Labs, for an order dismissing the third-party complaint is granted to the extent of dismissing the second and third causes of action for equitable and common-law indemnifiction; and it is further
ORDERED that the motion is otherwise denied.
The plaintiff is the successor-in-interest to TonicCare, LLC ("TonicCare"), which was engaged in the skin-care business. On October 15, 2010, TonicCare entered into an agreement with Delta Direct Marketing, LLC ("Delta"), that allowed Delta to sell and distribute its products on consignment. The agreement required Delta to use its best efforts to sell and distribute the inventory of TonicCare's products that was consigned to it (the "consigned inventory"). TonicCare dissolved on December 31, 2010, and the plaintiff succeeded to its rights under the agreement with Delta. The plaintiff terminated that agreement on March 16, 2012, and commenced an action against Delta in this court alleging, inter alia, that Delta had failed to use its best efforts to sell and distribute the consigned inventory and that it had failed to account therefor. A default judgment was entered against Delta on July 17, 2014. Delta's motion to vacate its default was denied by an order of this court dated December 16, 2015. No part of the judgment has been satisfied.
On May 28, 2015, the plaintiff, seeking to pierce Delta's corporate veil, commenced this action against Clifford Morgan ("Morgan"); Gamma Enterprises, LLC ("Gamma"); Alpha Direct Marketing, LLC ("Alpha"); and Jericho Capital Corp. ("Jericho"). The plaintiff alleged that Delta was a sham entity and the alter ego of Morgan, Gamma, Alpha, and Jericho. Morgan was the managing member of Delta and the manager and president of both Gamma and Alpha. He had an ownership interest in Gamma, which had an ownership interest in both Delta and Alpha. Jericho had a 51% ownership interest in both Delta and Alpha until it sold those interests to Gamma on December 31, 2011. Morgan, Gamma, and Alpha moved to dismiss the complaint insofar as it was asserted against them. Jericho also moved for the same relief. In separate orders dated January 13, 2017, Morgan, Gamma, and Alpha's motion was granted, and Jericho's motion was denied. Jericho then commenced a third-party action for equitable, common-law, and contractual indemnification against Gamma. Gamma now moves to dismiss the third-party action.
The second and third causes of action are for equitable and common-law indemnification. The plaintiff in the main action alleges that Jericho was Delta's alter ego and, therefore, liable for payment of the default judgment against Delta. Jericho alleges that it did not direct, supervise, or control Delta. Jericho alleges that Delta was directed, supervised, and controlled by Gamma. Therefore, Gamma should indemnify Jericho for any damages that it is liable to pay the plaintiff.
The principle of equitable indemnification, also known as common-law indemnification, allows a non-culpable party who has been compelled to make a payment to shift the entire burden of loss to the liable party and obtain full reimbursement (Arch Ins. Co. v Harleysvill Worcester Ins. Co., US Dist Ct, SDNY, July 7, 2014, Cote, J. [2014 WL 3377124] at *7, citing Frank v [*2]Meadowlakes Dev. Corp., 6 NY3d 687, 691). Common-law indemnification is generally available in favor of one who is held responsible solely by operation of law because of his relation to the actual wrongdoer (McCarthy v Turner Constr., Inc., 17 NY3d 369, 375). The predicate of common-law indemnity is vicarious liability without actual fault on the part of the proposed indemnitee (Trustees of Columbia Univ. v Mitchell/Giurgola Assoc., 109 AD2d 449, 453). Thus, there is no common-law indemnification claim when, as here, the plaintiff seeks recovery from the defendant because of the latter's alleged wrongdoing, i.e., breach of contract, and does not seek to hold the defendant vicariously liable for any negligence by the third-party defendant (Chatham Towers, Inc. v Castle Restoration & Constr., Inc., 151 AD3d 419; Edgewater Constr. co v 81 & 3 of Watertown, Inc., 252 AD2d 951, 952). Accordingly, the second and third causes of action for equitable and common-law indemnification are dismissed.[FN1]

The right to contractual indemnification depends upon the specific language of the contract (George v Marshalls of MA, Inc., 61 AD3d 925, 930). The promise to indemnify should not be found unless it can be clearly implied from the language and purpose of the entire agreement and the surrounding circumstances (Id.). The Equity Ownership Purchase Agreement dated December 31, 2011, in which Jericho sold its 51% ownership interest in Delta to Gamma, contains the following language:
"[Gamma] hereby agrees to indemnify and hold harmless [Jericho], and [Jericho's] members, managers, officers, and directors and their respective heirs executors and administrators from...any and all manner of loss, suits, claims, demands, damages, debts, liabilities, obligations, costs, expenses, actions, or causes of action (including, but not limited to, actual damages, punitive damages, fines and attorney's fees and costs, whether or not litigation is commenced) arising out of, involving, or relating in any way to the operation of [Delta] from the date of its organization and continuing through and after the date of this Agreement."
It is well settled that, on a motion to dismiss pursuant to CPLR 3211, the court is to liberally construe the complaint, accept the alleged facts as true, give the plaintiff the benefit of every possible favorable inference, and determine only whether the alleged facts fit within any cognizable legal theory (see, Leon v Martinez, 84 NY2d 83, 87-88). Under CPLR 3211(a)(1), dismissal is warranted only if the documentary evidence submitted utterly refutes the plaintiff's factual allegations, conclusively establishing a defense to the asserted claims as a matter of law (Id. at 88). The standard of review of a third-party defendant's motion to dismiss is even more liberal. The mere possibility of a claim over sustains the sufficiency of the third-party pleading (Assured Guar. Mun. Corp. v DB Structured Prods, Inc., 33 Misc 3d 720, 733, citing Braun [*3]v City of New York, 17 AD2d 264, 268).
Applying these principles, the court finds that a promise to indemnify Jericho for Delta's breach of contract may be implied from the language and purpose of the Equity Ownership Purchase Agreement and the surrounding circumstances (George v Marshalls of MA, Inc., supra). The Agreement provided for Jericho to sell its 51% equity interest in Delta to Gamma for $26,000 "plus [Gamma's] assumption of all liabilities of [Delta]." Gamma's assumption of Delta's contractual liabilities was, therefore, part of the purchase price. The Agreement also provided for Gamma to indemnify Jericho for "all manner of loss, suits, claims, demands, damages, debts, liabilities, obligations, costs, expenses, actions, or causes of action... arising out of, involving, or relating in any way to the operation of [Delta]" (emphasis added).
Relying on Facilities Dev. Corp. v Miletta (180 AD2d 97, 102), Gamma contends that, when, as here, the indemnification agreement is between sophisticated business entities, it will not be construed as intending to indemnify either party for its own wrongdoing unless the language of the agreement clearly connotes an intent to provide for such indemnification. Gamma contends that the Equity Ownership Purchase Agreement does not so provide. The Agreement, however, provides for Gamma to indemnify Jericho for punitive damages and fines. Although an agreement to be indemnified against punitive damages is unenforceable as against public policy (Public Serv. Mut. Ins. Co. v Goldfarb, 53 NY2d 392, 427), the court finds that the inclusion of punitive damages and fines in the indemnity language evinces an intent to indemnify Jericho for its own and/or Delta's wrongdoing.
Gamma contends that Jericho's claim for indemnification is incompatible with the plaintiff's veil-piercing claim. Gamma contends that veil piercing requires a showing that Jericho abused the corporate form, which is predicated on intentional, wrongful conduct. Gamma contends that indemnity is not available for intentional misconduct.
Gamma is correct that New York law does not permit a party to indemnify itself against damages for its intentional torts (Barbagallo v Marcum LLP, US Dist Ct, EDNY, May 11, 2012, Weinstein, J. [2012 WL 1664238] at *4). Contracts that purport to indemnify a party for damages flowing from the intentional causation of injury are unenforceable as against public policy (Id.). However, where no finding of an intent to injure has been made, nothing in the public policy of this State precludes indemnity for compensatory damages flowing from a defendant's volitional act (Public Serv. Mut. Ins. Co. v Goldfarb, supra).
Contrary to Gamma's contentions, indemnification and veil-piercing actions are not inherently incompatible (Kertesz v Corn, 698 F3d 89, 91 [2nd Cir]). A claim based on the alter-ego theory is not a claim for substantive relief, but a procedural device (1 Fletcher, Cyclopedia of the Law of Corporations§ 41.10 [September 2016 Update]; Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C1007:3 at 46). A finding of alter ego, standing alone, creates no cause of action (Fletcher, supra). It merely furnishes a means for a complainant to reach a second corporation or individual upon a cause of action that otherwise would have existed only against the first corporation (Id.). An attempt to pierce the corporate veil is simply a means of imposing liability on an underlying cause of action such as a tort or breach of contract (Id.).
The gravamen of the plaintiff's complaint against Delta in the underlying action was that Delta breached its contract with TonicCare by failing to use its best efforts to sell and distribute [*4]TonicCare's consigned inventory. After an inquest, this court awarded the plaintiff damages against Delta in the principal amount of $1,240,094.78, which is exactly the same amount of damages that the plaintiff sought in its first cause of action for breach of contract against Delta. Although the complaint in the underlying action also contained a cause of action for tortious interference with prospective economic advantage, no damages were awarded thereon. Thus, if the plaintiff is successful in its attempt to pierce Delta's corporate veil, Jericho will be liable to the plaintiff for the damages flowing from Delta's breach of contract. While a breach of contract is a "volitional act," it is not an intentional tort or crime for which indemnity is unavailable (see, Barbagallo v Marcum LLP, supra; Friedman v Hartmann, 787 F Supp 411, 418 [SDNY]). Since a contract is simply a set of alternative promises either to perform or to pay damages for nonperformance, a breach of contract is not necessarily a "wrongdoing" (Assured Guar. Mun. Corp. v DB Structured Prods, Inc. supra at n 13, citing Oliver Wendell Holmes, The Common Law, at 235-236 [M. Howe (editor) 1963]) .[FN2]

Finally, contrary to Gamma's contentions, Jericho's claim for contractual indemnification is not premature. While at one time it was thought that a cause of action for indemnity could not be brought by impleader in the main action since the indemnity claim was premature, it is now settled that an indemnity claim may be asserted by a third-party action in the main case (CPLR 1007; DiPerna v American Broadcasting Cos., 200 AD2d 267, citing McDermott v City of New York, 50 NY2d 211, 218, n 3). A third party claim is a permissible form of hypothetical cause of action (Alexander, Practice Commentaries, supra CPLR Cl007:2 at 45). It provides an accelerated means of resolving the primary liability and ultimate liability in one proceeding, avoiding multiplicity and circuity of actions and promoting consistency of results (Id.). It allows the third-party plaintiff to obtain the earliest possible determination of the extent to which it may expect to be reimbursed for any loss, although the liability of the third-party defendant is contingent, in most cases, upon the original defendant's satisfaction of the plaintiff's judgment against him (Id.). 
The cases on which Gamma relies are distinguishable. In FSP, Inc. v Societe Generale(US Dist Ct, SDNY, Jan. 14, 2003, Daniels, J. [2003 WL 124515]), it was premature for the plaintiff to seek a declaration regarding the defendant's obligation to defend and indemnify it with regard to potential, unfiled claims and reimbursement for losses arising from future, anticipated claims. In Altman v Bayliss(US Dist Ct, WDNY, July 22, 1997, Elfvin, J. [1997 WL 436711]), it was premature to seek summary judgment on the indemnification claim before there was a determination on the issue of liability in the main action. In Brasch v Yonkers Constr. Co.(306 AD2d 508), it was inappropriate to require the third-party defendant, who was not an insurer, to provide a defense to the third-party plaintiff in the main action before the obligation of the third-party defendant to indemnify had been determined.
None of those situations are applicable here. Accordingly, Gamma's motion to dismiss the third-party complaint is denied as to the first cause of action for contractual indemnification.Dated: September 7, 2017
Hon. Elizabeth H. Emerson
J.S.C.



Footnotes

Footnote 1:The third cause of action also contains a request for a constructive trust on Gamma's funds and assets to cover Jericho's attorney's fees and liability to the plaintiff. Although not briefed by the parties, the court finds that Jericho has failed to state a cause of action for a constructive trust, which requires, inter alia, a transfer of money or property in reliance on a promise (see, Eickler v Pecora, 12 AD3d 635, 636; Matter of Bayside Controls v Lind, 295 AD2d 343, 345-346). Jericho does not allege a "transfer in reliance." Moreover, Jericho seeks only money damages. A constructive trust is a equitable remedy that should not be imposed unless a legal remedy is inadequate (Bertoni v Catucci, 117 AD2d 892, 895).

Footnote 2:Even if some of the damages were awarded for tortious interference with prospective economic advantage, Jericho could still seek indemnification for the remaining contractual damages.