■ SUMO CONTAINER STATION, INC., Appellant, v EVANS, ORR, PACELLI, NORTON & LAFFAN, P. C., et al., Respondents.

[719 NYS2d 223] —Orders, Supreme Court, New York County (Karla Moskowitz, J.), entered June 28, 1999 and May 5, 2000, which granted the motions of defendants Evans, Orr, Pacelli, Norton & Laffan, P. C. (Evans), Donald G. Derrico, Esq., Kemper Insurance Company and O'Brien, McGarry, Murtagh & Mayr (O'Brien), for summary judgment dismissing the third amended complaint against them, unanimously affirmed, without costs.

In late 1987, plaintiffs in the underlying action sued Sumo and Hertz Penske Truck Leasing Inc. (Hertz) alleging that, in a November 1985 accident, their car had been struck by a truck that Sumo leased from Hertz. Kemper, Hertz's insurer, assigned O'Brien to represent both Sumo and Hertz but issued a reservation of rights indicating that it would disclaim coverage if it was determined that a Sumo-owned, rather than a Hertz-owned truck, was responsible for the accident. In 1990, when it became apparent that the ownership of the truck would remain an issue affecting coverage, Kemper assigned Orr of the Evans firm to represent Sumo and O'Brien continued as Hertz' counsel.

The underlying action was settled for $295,000, which Hertz advanced pursuant to an agreement that a jury trial would be held to determine ownership of the offending truck and that if it was determined that a Sumo-owned truck was involved, Sumo would be responsible for that sum. After a jury determined that a Sumo- owned truck was involved, judgment was entered against Sumo and enforcement procedures commenced. Sumo then commenced this action against defendant insurers and attorneys for breach of contract, legal malpractice, fraud, collusion and violation of Judiciary Law § 487. Sumo alleges, *inter alia,* that defendants' obligations to it as attorneys and insurers were compromised by inherent conflicts of interest; that it was incumbent on defendants to advise Sumo of those conflicts and of its right to independent counsel at Kemper's expense.

The cases relied on by Sumo, such as *Allstate Ins. Co. v Noorhassan* (158 AD2d 638), while supporting its right to independent counsel at Kemper's expense, do not establish an affirmative duty on defendants' part to advise Sumo of that entitlement. In addition, it is plain that Sumo cannot establish a prima facie case of malpractice against the attorneys assigned by the insurer. The cited conflict of interest, even if a violation of the Code of Professional Responsibility, does not by itself support a legal malpractice cause of action (*see, Lavanant v General Acc. Ins. Co.*, 212 AD2d 450; *Mills v Pappas*, 174 AD2d

780, *lv dismissed in part and denied in part* 78 NY2d 1121, *cert denied* 504 US 971). Sumo's malpractice claims were correctly dismissed in light of the absence of any triable issue of fact as to whether the attorney defendants in their representation of Sumo breached their duty of care or proximately caused Sumo to sustain harm (*see, Tinter v Rapaport*, 253 AD2d 588, 590).

The record discloses that notice of defendants' conflict of interest was implicit in the correspondence among the parties and was repeatedly given from the inception of the underlying action through the trial, at which Sumo's secretary-treasurer testified that he was aware of Sumo's exposure and right to independent counsel, but that he wanted Orr to proceed. Moreover, notwithstanding its awareness of its exposure Sumo failed to cooperate with Kemper. Sumo did not advise its own carrier of the claim or provide its assigned counsel or Kemper proof of coverage for its own vehicles. Any claim that Sumo believed that it provided proof of such coverage is belied by its secretary-treasurer's statement, well after Sumo's representation by the Evans firm had commenced, that he had no information on coverage. Under these circumstances, the motion court correctly concluded that "[i]n the face of Sumo's manifest indifference to determining the identity of the insurer for its own vehicles, it can hardly be said that the law firm entering the picture over four years after the accident was legally bound to exert Herculean efforts to investigate."

It was incumbent on Sumo to show that the settlement of the underlying action was improvident and that it would not have sustained the claimed damages "but for" defendant attorneys' alleged misconduct leading to the settlement (*Lauer v Rapp*, 229 AD2d 383). Sumo, however, does not challenge the reasonableness of the $295,000 settlement. Nor does Sumo dispute Evans' belief that the settlement was in Sumo's best interest since it capped Sumo's potential liability to plaintiffs in the underlying action. Sumo's retrospective criticism of defendant attorneys' conduct in urging the settlement upon it is insufficient to raise any triable issue as to whether Evans' exercises of professional judgment were at the time of their making so unreasonable as to have manifested professional incompetence (*see, Bernstein v Oppenheim & Co.*, 160 AD2d 428, 430). In any event, it is plain that even if defendant attorneys had breached some duty of professional care to Sumo, such breach was not the proximate cause of any harm sustained by Sumo. Sumo's exposure to uninsured liability was the direct consequence of Sumo's indifference to verifying its trucks'

coverage and notifying its carrier of the accident (*see, Arnav Indus., Inc. Retirement Trust v Brown Raysman, Millstein, Felder & Steiner*, 275 AD2d 640).

We have considered Sumo's remaining arguments and find them unavailing. Concur—Rosenberger, J. P., Nardelli, Williams, Mazzarelli and Friedman, JJ.