■ MARY S. ELACQUA et al., Respondents-Appellants, v PHYSICIANS' RECIPROCAL INSURERS, Also Known as PRI, Appellant-Respondent. [800 NYS2d 469]—

Lahtinen, J. Cross appeals from a judgment of the Supreme Court (Malone, Jr., J.), entered July 9, 2004 in Albany County, which, inter alia, granted a motion by plaintiff OB/GYN Health Center Associates, LLP for partial summary judgment and declared that defendant was required to indemnify it in an underlying action.

Issues regarding the coverage and construction of a medical malpractice insurance policy are implicated in this appeal. Plaintiffs Mary S. Elacqua and William Hennessey, both licensed physicians, are members of plaintiff OB/GYN Health Center Associates, LLP (hereinafter the partnership). Elacqua and Hennessey each had malpractice insurance policies with defendant, and the partnership was named as an additional insured on such policies.[1] In June 1994, Kim Hytko sought medical attention at the partnership and was seen and treated by Jane Szary, a nurse practitioner employed by the partnership.[2] In November 1994, Hytko succumbed to cancer and, thereafter, her husband commenced a malpractice action against plaintiffs and Szary. Shortly before the trial of that action, the attorney retained by defendant to defend plaintiffs sought an adjournment because he perceived a conflict in his representation. As a consequence, defendant retained individual counsel for each physician and the case proceeded to trial.[3] At the conclusion of Hytko's case, Elacqua and Hennessey successfully sought dismissal of Hytko's complaint as against them. However, a verdict of nearly $2 million was rendered against the partnership based upon Szary's negligence.

Defendant refused to provide any indemnification to plaintiffs as it took the position that its policy did not afford coverage since the only liability of the partnership was vicarious through its employee, Szary. Plaintiffs commenced the instant action seeking money damages for breach of contract based upon defendant's alleged failure to properly defend and failure to

---

1. The policies are identical and are referred to herein singularly as the "policy."

2. Szary had her own policy of insurance issued by the Granite State Insurance Company.

3. Szary reportedly settled with Hytko for $65,000 prior to trial, but remained in the action as a third-party defendant.

indemnify and also seeking a declaration that defendant is required to indemnify plaintiffs as to the underlying verdict. Plaintiffs moved for partial summary judgment declaring that defendant is liable for the judgment rendered in the underlying malpractice action. Supreme Court granted summary judgment in favor of the partnership finding coverage for the partnership under the policy and, moreover, that defendant failed as a matter of law to timely disclaim coverage as required by Insurance Law § 3420 (d). Defendant appeals from this holding. Plaintiffs cross-appeal from that portion of Supreme Court's judgment that "[r]eluctantly" declared, upon constraint of language in *Sumo Container Sta. v Evans, Orr, Pacelli, Norton & Laffan* (278 AD2d 169 [1st Dept 2000]), that defendant had no obligation to advise plaintiffs of their right to counsel of their own choosing.

We turn first to defendant's argument that its policy provides no coverage for the claim against the partnership and, accordingly, that it had no obligation to disclaim. While it is well settled that a "[d]isclaimer pursuant to [Insurance Law § ] 3420 (d) is unnecessary when a claim falls outside the scope of the policy's coverage portion" (*Matter of Worcester Ins. Co. v Bettenhauser*, 95 NY2d 185, 188 [2000]), we are unpersuaded that this claim fell outside the scope of the policy's coverage.

Defendant's argument that there is no coverage is premised upon its contention that certain provisions in the "Limits of Liability" part of the policy provide a map which, by careful navigation, sets forth a path precluding any coverage by it under the narrow circumstances of this case (i.e., physicians found not negligent, nurse practitioner found negligent, nurse practitioner had separate insurance with another carrier, and the partnership was vicariously liable for the negligence of the nurse practitioner).[4] The labels placed on the relevant policy language by the insurer, however, do not control and, accordingly, even

---

**4.** The policy provisions (with amendments) upon which defendant relies include:

"THE LIMITS OF LIABILITY APPLICABLE TO YOU

"As a person or ENTITY, you are insured under this Section, and have a PER-CLAIM LIMIT OF LIABILITY and ANNUAL AGGREGATE LIMIT OF LIABILITY to the extent set forth below. . . .

"2. In addition to the coverage this policy provides to the physician, the policy will also provide coverage equal to the limits of liability of this policy to the physician's ENTITY under the following circumstances and subject to the following limitations: . . .

"b. A claim is made against the ENTITY based on the conduct of a physician insured by [defendant] for the conduct of an AD-

though falling under a category called "limiting language" rather than "exclusion," the language may nevertheless "amount[ ] to an exclusion" (*Planet Ins. Co. v Bright Bay Classic Vehs.*, 75 NY2d 394, 400 [1990]). When coverage is afforded to an entity in a policy's "Insuring Agreement," an attempt to deny coverage should generally be viewed as the exercise of an exclusion (*see Matter of Worcester Ins. Co. v Bettenhauser, supra* at 190). If the issue is not "whether coverage existed under any circumstances, but instead the nature and extent of coverage," then an effort by the insurer to limit coverage is tantamount to "exercis[ing] a policy exclusion" (*Jefferson Ins. Co. of N.Y. v Travelers Indem. Co.*, 92 NY2d 363, 371 [1998]). "[W]here some ambiguity is present regarding the extent of coverage or any possible exclusions, the insurer must timely disclaim" (*id.* at 370; *see Matter of Worcester Ins. Co. v Bettenhauser, supra* at 188-189; *Greater N.Y. Mut. Ins. Co. v Clark*, 205 AD2d 857, 858 [1994], *lv denied* 84 NY2d 807 [1994]).

Here, the policy was divided into two sections, each with numerous parts. The definitions were contained in Section II, Part 11 and the first three parts of Section I were, respectively, labeled as (1) "Insuring Agreements," (2) "[Defendant's] Limits of Liability" and (3) "What this Policy Does Not Insure (Exclusions)." We agree with Supreme Court that Section I, Part 1, pertaining to "Insuring Agreements," was phrased broadly enough—particularly when read in conjunction with the policy's definitions—to initially implicate coverage for the partnership.[5] It is clear that the partnership was provided with coverage in many situations under the policy. Morever, the partnership was specifically named as an additional insured in the policy (*cf. Pecker Iron Works of N.Y. v Traveler's Ins. Co.*, 99 NY2d 391, 393 [2003] [observing that "the well-understood meaning of the

---

DITIONAL NAMED INSURED or an ADDITIONAL INSURED for whom [defendant] is responsible . . ."
Under the definitions section of the policy, an "additional insured" is defined as one who "is employed by the NAMED INSURED or by an ADDITIONAL NAMED INSURED and is listed by position as an ADDITIONAL INSURED on the Declarations Page." Szary was not named on the declarations page.

5. As is relevant here, Section I, Part 1 ("Insuring Agreements") states that defendant would pay "all sums which you become legally obligated to pay for a claim" provided, among other things, that "the CLAIM arises from your rendering or failing to render PROFESSIONAL SERVICES." The definition of "Claim" includes a "lawsuit . . . which alleges disability, sickness, disease or death to a patient arising from your rendering or failing to render PROFESSIONAL SERVICES." "Professional Services" is defined as "the *rendering or failing to render* of medical or surgical treatment, diagnosis, opinion or advice."

term (additional insured) is an entity enjoying the same protection as the named insured"] [internal quotation marks omitted]). It is certainly not a stretch to conclude that the typical physician purchasing insurance individually and for his or her partnership "could reasonably expect" coverage for that partnership under the circumstances of this case (*see Jefferson Ins. Co. of N.Y. v Travelers Indem. Co., supra* at 371). Hence, we find that the language under which defendant is attempting to avoid any obligation to plaintiffs should be construed as an exclusion.

Having found the relevant policy language upon which defendant relies is an exclusion from coverage, we turn to whether the record establishes that defendant failed to comply with Insurance Law § 3420 (d) as a matter of law. The failure to satisfy that statute's requirements precludes an insurer from denying coverage based on a policy exclusion (*see Matter of Worcester Ins. Co. v Bettenhauser*, 95 NY2d 185, 188-189 [2000], *supra*). We find merit in defendant's assertion that the record reveals factual issues as to whether defendant complied with the statute.

Defendant claims that it sent notices in February 1997 disclaiming vicarious liability of the partnership for the acts of the nurse practitioner. Defendant included an affidavit from an individual who described the typical office practices and asserted that the procedure for sending notices by certified mail, return receipt requested, had been put in motion. However, defendant was unable to produce any of the return receipts. The physician plaintiffs set forth affidavits contending that no such notices were received by them until April 2002, only days before the trial on the underlying malpractice action was set to commence. There is also a contention that the notices were sent to three other individuals in February 1997 and, while one acknowledged receiving a notice, two others denied receiving such notice. Under these circumstances, a triable issue exists regarding whether defendant gave adequate and timely notice of its effort to deny coverage (*see e.g. Nassau Ins. Co. v Murray*, 46 NY2d 828, 829-830 [1978]; *Matter of State Farm Mut. Auto. Ins. Co. [Celebucki]*, 13 AD3d 1023, 1024 [2004]).

We next address plaintiffs' cross appeal. As previously observed, counsel for plaintiffs correctly discerned that there existed a conflict of interest in his representation of all three plaintiffs inasmuch as defendant took the position that some of the underlying malpractice claims were covered under the policy while others were not (*see Nelson Elec. Contr. Corp. v Transcontinental Ins. Co.*, 231 AD2d 207, 208-210 [1997], *lv denied* 91

NY2d 802 [1997]). In such case, plaintiffs were entitled "to defense by an attorney of [their] own choosing," whose fees were to be paid by defendant (*Public Serv. Mut. Ins. Co. v Goldfarb*, 53 NY2d 392, 401 [1981]). While Supreme Court correctly recognized such entitlement, it held that it was constrained by *Sumo Container Sta. v Evans, Orr, Pacelli, Norton & Laffan* (278 AD2d 169 [2000], *supra*) to conclude that defendant had no obligation to advise plaintiffs of this right. We decline to follow that part of the *Sumo* decision. If defendant was obligated to defend plaintiffs in the underlying action and, as the decision in *Public Serv. Mut. Ins. Co. v Goldfarb* (*supra*) makes clear, provide them independent counsel of their own choosing, it follows that defendant was required to advise them of that right. To hold otherwise would seriously erode the protection afforded.

Cardona, P.J., Spain and Kane, JJ., concur.

Crew III, J. (concurring in part and dissenting in part). Although I agree with the majority that defendant had an obligation to advise plaintiffs of their right to select independent counsel of their choosing, I respectfully dissent as to the issue of coverage. To be sure, as the majority points out, an "additional insured" traditionally enjoys the same coverage and protection as the named insured, and there admittedly are many situations under the policy at issue for which the partnership would be afforded coverage. In my view, however, the inquiry here focuses on whether the policy at issue extends coverage to the partnership in one particular situation, i.e., vicarious liability for Jane Szary's alleged negligence, and that query, in turn, is answered not by reference to the language found in the "Insuring Agreements" section of the policy but, rather, by analysis of the language contained in the relevant endorsement amending the original policy provisions. In that regard, the relevant provisions of the "Claims Made" endorsement are as follows:

"In consideration of the payment of the premium, it is agreed that, notwithstanding any other contrary provision of the policy, the policy is amended to provide as follows. . .

"In addition to the coverage this policy provides to the physician, the policy will also provide coverage equal to the limits of liability of this policy to the physician's ENTITY under the following circumstances and subject to the following limitations:
. . .

"b. A claim is made against the ENTITY based on the conduct of a physician insured by [defendant] or the conduct of an ADDITIONAL NAMED INSURED or an ADDITIONAL INSURED for whom such ENTITY is responsible; and

"c. The CLAIM IS OTHERWISE covered under this policy."

The foregoing language, in my view, in no way "excludes" coverage under the policy but, rather, defines the circumstances under which additional coverage may be provided to the partnership—namely, where an individual seeks to hold the partnership liable for the conduct of an additional named insured or an additional insured. Inasmuch as Szary is neither an additional named insured nor an additional insured under the policy, the policy simply does not provide coverage to the partnership for her negligent conduct, and the general provisions of the policy, no matter how expansively construed, cannot override the effect of the "Claims Made" endorsement. That said, it necessarily follows that defendant cannot be compelled to satisfy the underlying judgment upon a claim of untimely notice of disclaimer.

Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as granted the motion of plaintiff OB/GYN Health Center Associates, LLP for partial summary judgment and as declared that defendant had no obligation to advise plaintiffs of their right to counsel of their own choosing; motion denied to said extent and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.