**EXECUTIVE RISK INDEMNITY INC., Plaintiff,**

v.

**ICON TITLE AGENCY, LLC, Defendant.**

No. 10 Civ. 2473(SAS).

United States District Court, S.D. New York.

Aug. 3, 2010.

---

S. Dwight Stephens, Esq., Michael Frank Panayotou, Esq., Melito & Adolfsen, P.C., New York, NY, Daniel J. Standish, Esq., Gary Paul Seligman, Esq., Wiley Rein LLP, Washington, DC, for Plaintiff.

David B. Hamm, Esq., Howard Lowell Wexler, Esq., Herzfeld & Rubin, P.C., New York, NY, for Defendant / Counter Claimant.

## *OPINION AND ORDER*

SHIRA A. SCHEINDLIN, District Judge.

### I. INTRODUCTION

Executive Risk Indemnity, Inc. ("Executive Risk") moves to dismiss Icon Title Agency's ("Icon") counterclaim for failure to state a claim. For the reasons discussed below, the motion is granted.

### II. BACKGROUND

In December 2006, Icon obtained from Executive Risk professional liability insurance in connection with Icon's title agency operations.[1] On its coverage application to Executive Risk, Icon checked the box "Never" in response to the question:

---

1. *See* Complaint ("Compl.") ¶¶ 7, 13.

"Does Applicant use a written contract with clients?" [2] Icon also answered "no" to a question that asked: "Does Applicant subcontract work to others?" [3] Icon's policy was subsequently extended to January 2009. [4] The policy required Executive Risk to defend Icon from any claim covered by the policy, including groundless, false, or fraudulent allegations. [5]

On August 18, 2009, Icon was named as a defendant in an action brought by Am-Trust Bank, a mortgage lender, alleging that Icon and others engaged in a scheme to use straw buyers and phantom sellers to fraudulently obtain mortgage loans ("the *AmTrust* action"). [6] A co-defendant, Commonwealth Land Title Insurance Company ("Commonwealth"), filed a cross-claim against Icon for contractual indemnification based on its reliance on Icon's allegedly faulty or fraudulent title searches. [7]

Executive Risk assumed Icon's defense in the *AmTrust* action, but reserved its rights to deny coverage for alleged conduct not covered by the policy, including any contractual obligations assumed by Icon—for example Icon's agreement to indemnify Commonwealth for any claims based on faulty title searches. [8] Subsequently, Executive Risk learned that Icon subcontracted a substantial percentage of its title search work to others, contrary to the representations Icon made in connec-

tion with its initial application and its application for an extension of the policy. [9]

Executive Risk filed this action on March 18, 2010, seeking a declaratory judgment that the two successive professional liability policies are rescinded and void *ab initio* due to alleged material misrepresentations made to Executive Risk by Icon regarding the subcontracting. [10] Icon filed its Answer to Executive Risk's Complaint on May 18, 2010, which included a counterclaim for deceptive business practices under New York General Business Law § 349. [11] Icon filed an amended counterclaim on June 4, 2010. [12] Icon's counterclaim alleges that Executive Risk engaged in deceptive business practices by failing to inform Icon that because its reservation of rights created a potential conflict of interest for the counsel provided by Executive Risk to represent Icon in the *AmTrust* action, Icon had the right to retain independent counsel at Executive Risk's expense. [13] Executive Risk now moves to dismiss Icon's counterclaim.

## III. LEGAL STANDARD

### A. Motion to Dismiss

In deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must "accept as true all of the factual allegations contained in

2. *See* Application, Ex. A to Compl., Question 20.

3. *See id.*, Question 21.

4. *See* Compl. ¶ 22.

5. *See* Policy, Ex. B to Compl. § XI.

6. *See* Compl. ¶¶ 28–29.

7. *See id.* ¶ 28; Commonwealth's Answer and Crossclaim, Ex. E to Compl. ¶¶ 630–631.

8. *See* March 27, 2009 Reservation of Rights Letter, Ex. H to Compl.

9. *See* Compl. ¶ 24.

10. *See id.* at 1.

11. *See* Defendant Icon Title Agency's Answer with Counterclaim at 1.

12. *See* Defendant Icon Title Agency's Answer with Amended Counterclaim ("Def. Ans.") at 1.

13. *See* Defendant Icon's Amended Counterclaim ("Am. Counterclaim") ¶ 71.

the complaint" [14] and "draw all reasonable inferences in plaintiff's favor." [15] However, the court need not accord "[l]egal conclusions, deductions or opinions couched as factual allegations . . . a presumption of truthfulness." [16] To survive a 12(b)(6) motion to dismiss, the allegations in the complaint must meet a standard of "plausibility." [17] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [18] Plausibility "is not akin to a probability requirement", rather, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." [19]

When deciding a motion to dismiss under Rule 12(b)(6), the court is normally required to consider only the allegations on the face of the complaint. Even so, "[d]ocuments that are attached to the [complaint] or incorporated in it by reference are deemed part of the pleading and may be considered." [20] The court is only allowed to consider documents outside the pleading if the documents are integral to the pleading or subject to judicial notice. [21]

### B. Consumer Fraud

Section 349 of the New York General Business Law is a consumer protection statute that creates a private right of action for consumers injured by "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state[.]" [22] "To state a claim under § 349, a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." [23] "A 'deceptive act or practice' has been defined as a representation or omission 'likely to mislead a reasonable consumer acting reasonably under the circumstances.' " [24]

## IV. DISCUSSION

### A. Icon Has Alleged a Consumer–Oriented Practice

■ Section 349 is designed to address "broad consumer-protection concerns." [25] As such, a plaintiff bringing a claim under

14. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). *Accord Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2d Cir.2009).

15. *Ofori–Tenkorang v. American Int'l Group, Inc.*, 460 F.3d 296, 298 (2d Cir.2006).

16. *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir.2007) (quotation marks omitted).

17. *Twombly*, 550 U.S. at 564, 127 S.Ct. 1955.

18. *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quotation marks omitted).

19. *Id.* (quotation marks omitted).

20. *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir.2007).

21. *See Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir.2006).

22. N.Y. Gen. Bus. Law § 349(a), (h). *See also Gaidon v. Guardian Life Ins. Co.*, 94 N.Y.2d 330, 344, 704 N.Y.S.2d 177, 725 N.E.2d 598 (1999) (noting that "[i]n 1980, the Legislature took a significant step to expand the statute's enforcement scheme by allowing a private cause of action").

23. *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir.2009).

24. *Shapiro v. Berkshire Life Ins. Co.*, 212 F.3d 121, 126 (2d Cir.2000) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.S.2d 20, 26, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995)).

25. *Gaidon*, 94 N.Y.2d 330 at 343, 704 N.Y.S.2d 177, 725 N.E.2d 598.

section 349 must, "at the threshold, charge conduct that is consumer oriented .... [D]efendant's acts or practices must have a broad impact on consumers at large."[26] While "private contract disputes unique to the parties ... [do] not fall within the ambit of the statute,"[27] New York law recognizes that form contracts and standard policies would likely have an impact on similarly-situated consumers.[28] Additionally, the "consumer-oriented" requirement is to be construed liberally.[29]

In *Elacqua v. Physicians' Reciprocal Insurers ("Elacqua II")*, the court concluded that plaintiffs sufficiently pled a broad consumer impact where they alleged that an insurer admitted to maintaining a "routine practice" of not informing its insureds of their right to independent counsel.[30] In a similar vein, Icon alleges that Executive Risk *routinely* sent standard form reservation of rights letters to its insureds that failed to notify them of their right to counsel of their choice at Executive Risk's expense.[31] Icon has sufficiently alleged that Executive Risk engaged in a policy with a broad consumer impact.

## B. Deceptive Practice

■■ An insurer's reservation of rights does not automatically entitle its insured to representation of its choice at the insurer's expense. Instead, the insured's right to independent counsel is only triggered when the reservation of rights creates a potential conflict of interest for the counsel provided by the insurer, and in particular, where the defense attorney's duty to the insured would be to defeat liability on *any* ground but his duty to the insurer would be to defeat liability on *only those* grounds for which the insurer might be liable.[32] Executive Risk's reservation of rights letter explains that Icon's policy does not provide coverage for any fraudulent act or omission.[33] Because the *AmTrust* action may result in a finding that Icon acted fraudulently, Icon has alleged a potential conflict of interest sufficient to trigger a right to independent counsel.[34]

The next question is whether Executive Risk's failure to inform Icon of its right to retain its own counsel at Executive Risk's expense can constitute a "deceptive act or

**26.** *New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 320, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995).

**27.** *New York Univ.*, 87 N.Y.2d at 320, 639 N.Y.S.2d 283, 662 N.E.2d 763.

**28.** *See Makuch v. New York Cent. Mut. Fire Ins. Co.*, 12 A.D.3d 1110, 785 N.Y.S.2d 236, 238 (4th Dep't 2004) ("[T]he allegations that the forms making up plaintiffs' insurance policy are standard and regularly used by defendant are sufficient to support the allegation that defendant's actions are consumer-oriented."). *Cf. New York Univ.*, 87 N.Y.2d at 309, 639 N.Y.S.2d 283, 662 N.E.2d 763 (finding no consumer-oriented policy where "[t]he policy was not a standard policy, but was tailored to meet the purchaser's wishes and requirements").

**29.** *See State of New York v. Feldman*, 210 F.Supp.2d 294, 301–02 (S.D.N.Y.2002).

**30.** 52 A.D.3d 886, 860 N.Y.S.2d 229, 231 (3d Dep't 2008).

**31.** *See* Am. Counterclaim ¶¶ 72–75.

**32.** *See Public Service Mut. Ins. Company v. Goldfarb*, 53 N.Y.2d 392, n. *, 442 N.Y.S.2d 422, 425 N.E.2d 810 (1981).

**33.** *See* March 27, 2009 Reservation of Rights Letter, Ex. H to Compl.

**34.** *Cf. Prashker v. United States Guarantee Co.*, 1 N.Y.2d 584, 593, 154 N.Y.S.2d 910, 136 N.E.2d 871 (1956) (holding that an insurance policy which excluded coverage for violations of regulations and not for other grounds of liability entitled the insured to independent counsel at the insurer's expense).

practice" within the ambit of section 349. The New York Court of Appeals has not directly addressed this issue, and the Departments of the Appellate Division that have reached this issue are divided. In *Sumo Container Station, Inc. v. Evans, Orr, Pacelli, Norton & Laffan, P.C.*, the First Department observed that "[t]he cases relied on by [plaintiff] ... while supporting its right to independent counsel at [defendants'] expense, *do not* establish an affirmative duty on defendants' part to advise Sumo of that entitlement." [35]

The Third Department, however, expressly declined to follow *Sumo* and held in *Elacqua I* that "[i]f defendant was obligated to defend plaintiffs in the underlying action and ... provide them independent counsel of their own choosing, it follows that defendant was required to advise them of that right. To hold otherwise would seriously erode the protection afforded." [36] The Third Department affirmed this decision in *Elacqua II*,[37] and the Second Department cited *Elacqua II*

with approval.[38] I need not resolve this split in authority, however, because as explained below, Icon has failed to allege an injury.[39]

## C. Icon Has Not Sufficiently Pled Injury

 Icon incorrectly states that the threat of divided loyalty and conflict of interest creates its own injury. "It is well established ... that the claimed deception cannot itself be the only injury." [40] In *Elacqua II*, the Third Department held that the insurer's failure to inform its insureds of their right to independent counsel, "*together with* plaintiffs' showing that undivided and uncompromised conflict-free representation was not provided to them, constitutes harm within the meaning of General Business Law § 349." [41] The plaintiffs in *Elacqua II* alleged that they were prejudiced by specific tactical decisions by the counsel provided by their insurer—injuries separate from the alleged deceptive acts.[42]

**35.** 278 A.D.2d 169, 719 N.Y.S.2d 223, 224 (1st Dep't 2000) (emphasis added).

**36.** *Elacqua v. Physicians' Reciprocal Insurers*, 21 A.D.3d 702, 800 N.Y.S.2d 469, 473 (3d Dep't 2005).

**37.** *See Elacqua II*, 860 N.Y.S.2d at 230 ("[W]hen the existence of both covered and uncovered claims gives rise to a conflict of interest between an insurer and its insured, the insured is entitled to independent counsel of his or her own choosing at the expense of the insurer and, moreover, the insurer has an affirmative obligation to advise the insured of such right.") (citation omitted).

**38.** *See Wilner v. Allstate Ins. Co.*, 71 A.D.3d 155, 893 N.Y.S.2d 208, 213–14 (2d Dep't 2010).

**39.** If I were to weigh in on this issue I would side with the Third Department. Moreover, the *Sumo* court did not engage in any meaningful analysis in reaching the conclusion that an insurer did not have a duty to notify its

insured of the right to independent counsel. Instead, *Sumo* merely noted that the cases the plaintiff cited in support of that duty were inapposite. *See Sumo*, 719 N.Y.S.2d at 224. Additionally, that the plaintiff in *Sumo* had both explicit and implicit notice of its right to independent counsel was important to the court's ruling. *See id.* Thus, *Sumo* is distinguishable from the case at bar, in which Icon alleges it had no notice whatsoever of this right. *See* Am. Counterclaim ¶ 79.

**40.** *Bildstein v. MasterCard Intern. Inc.*, 329 F.Supp.2d 410, 415 (S.D.N.Y.2004) (citing, for example, *Small v. Lorillard Tobacco Co., Inc.*, 94 N.Y.2d 43, 55, 698 N.Y.S.2d 615, 720 N.E.2d 892 (1999)).

**41.** *Elacqua II*, 860 N.Y.S.2d at 233 (emphasis added).

**42.** *See id.* (recounting specific decisions made by conflicted counsel demonstrating that insureds' "interests were [in]adequately represented ...").

The only injury that Icon alleges beyond the deceptive act itself is that the counsel provided to Icon by Executive Risk improperly disclosed certain information to Executive Risk, namely Icon's agreement to indemnify Commonwealth, and the fact that Icon subcontracted a substantial percentage of its title search work to others.[43] Icon alleges that these disclosures led to Executive Risk's decision to file suit seeking recision of its policy, requiring Icon to retain counsel in this action at its own expense and possibly lose coverage.[44]

This injury is both speculative and implausible. *First,* Commonwealth's cross-claim against Icon in the *AmTrust* action quoted the indemnification clause of the agency agreement between Icon and Commonwealth.[45] As a result, Executive Risk would have learned—inevitably—of Icon's agreement to indemnify Commonwealth.[46] *Second,* Icon's allegation that independent counsel would have advised Icon "to respond to discovery in an honest manner ... which would not have caused it to potentially jeopardize its insurance coverage herein" is implausible.[47] Icon was contractually obligated to provide Executive Risk "with all information, assistance and cooperation which the Company may reasonably require."[48] The manner in which Icon conducted its title searches is plainly relevant to the underlying *AmTrust* action, which alleged, *inter alia,* sales of real property in which the purported seller did not have valid title.[49] Even independent counsel retained by Icon could not have prevented Executive Risk from learning that Icon subcontracted its title search work to others. Icon has failed to state a claim for injury under section 349.[50]

## V. CONCLUSION

For the foregoing reasons, Icon's counterclaim is dismissed. The Clerk of Court is directed to close this motion [Document # 16]. A final pretrial conference is scheduled for November 9 at 4:30 pm.

SO ORDERED.

---

43. *See* Am. Counterclaim ¶¶ 77, 86.

44. *See id.* ¶¶ 86–92.

45. *See* Commonwealth's Cross Claim as Against Icon, Ex. E to Declaration of Gary P. Seligman, Esq. in Support of Motion to Dismiss Icon's Counterclaim ("Seligman Decl.") ¶ 628.

46. Contrary to Icon's allegations, Executive Risk's Complaint does not rely on Icon's failure to disclose its written contract with Commonwealth as a basis for seeking recision of the policy in this suit. *See* Compl. ¶¶ 35–38.

47. Am. Counterclaim ¶ 88.

48. Policy, Ex. B to Compl. § XI(E).

49. *See, e.g., AmTrust* Complaint, Ex. D to Seligman Decl. ¶¶ 65, 363.

50. If Icon is able to plead an injury at a later date it is free to do so if such a claim is timely and legally cognizable. *See* Defendant Icon's Memorandum of Law in Opposition to Motion to Dismiss at 20.