[6 NE3d 583, 983 NYS2d 465]

QBE INSURANCE CORPORATION, Respondent, v JINX-PROOF INC., Doing Business as BEAUTY BAR, Appellant, et al., Defendants.

Argued January 15, 2014; decided February 18, 2014

### APPEARANCES OF COUNSEL

*Devitt Spellman Barrett, LLP*, Smithtown (*John M. Denby* of counsel), for appellant.

*Thomas M. Bona, P.C.*, White Plains (*Anthony M. Napoli* and *Thomas M. Bona* of counsel), for respondent.

### OPINION OF THE COURT

MEMORANDUM.

The order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.

Plaintiff QBE Insurance Corp. (QBE) issued a liability policy to defendant Jinx-Proof Inc. (Jinx-Proof) that contained an assault and battery exclusion. In December 2007, a patron of a bar owned by Jinx-Proof commenced the underlying personal injury action to recover for injuries she allegedly sustained when one of Jinx-Proof's employees threw a glass at the customer's face. On January 28, 2008, Jinx-Proof notified QBE of the underlying action, which alleged claims sounding in both

negligence and intentional acts. QBE, through a third-party administrator, subsequently wrote two letters to Jinx-Proof—one on January 31, 2008, and the other on February 26, 2008—stating, among other things, that Jinx-Proof had no coverage for the assault and battery claims. Upon dismissal of the negligence and Dram Shop Act claims asserted in the underlying action, QBE commenced this declaratory judgment action and moved for summary judgment declaring that it was not obligated to defend or indemnify Jinx-Proof on the remaining claims. Jinx-Proof cross-moved for summary judgment dismissing the complaint as asserted against it. Supreme Court granted QBE's motion and denied Jinx-Proof's cross motion. The Appellate Division modified the order only to the extent of declaring that QBE is not obligated to defend Jinx-Proof in the underlying action, and otherwise affirmed (102 AD3d 508 [2013]).

■ The courts below properly determined that QBE effectively disclaimed coverage for the assault and battery claims asserted in the underlying action. The first letter sent to Jinx-Proof stated that QBE would not defend or indemnify Jinx-Proof "under the General Liability portion of the policy for the assault and battery allegations" and that Jinx-Proof did not have liquor liability coverage. The second letter stated that Jinx-Proof *did* have liquor liability coverage but that the policy excludes coverage for assault and battery claims. Specifically, the second letter stated:

> "[W]e are defending this matter under the Liquor Liability portion of the [commercial general liability] coverage, and under strict reservation of rights for allegations of Assault and Battery. Your policy excludes coverage for assault and battery claims . . . Therefore, should this matter proceed to verdict, any awards by the Court stemming from allegations of Assault and Battery will not be covered under your Commercial General Liability policy" (emphasis omitted).

Although the letters contained some contradictory and confusing language, the confusion was not relevant to the issue in this case. The letters specifically and consistently stated that Jinx-Proof's insurance policy excludes coverage for assault and battery claims. These statements were sufficient to apprise Jinx-Proof that QBE was disclaiming coverage on the ground of the exclusion for assault and battery, and this disclaimer was effective even though the letters also contained "reservation of

rights" language (*see e.g. Blue Ridge Ins. Co. v Jiminez*, 7 AD3d 652, 653 [2d Dept 2004]).

■ Finally, Jinx-Proof's claim that the liquor liability portion of the policy may have included coverage for assault and battery was not raised below and refers to matter dehors the record and is therefore beyond our review. Neither party submitted the liquor liability portion of the policy to the motion court, and those provisions were not included in the record on appeal. Thus, not only is Jinx-Proof's claim that it *may* have had coverage for assault and battery unreviewable, it is based on pure speculation.

PIGOTT, J. (dissenting). I would reverse and answer the certified question in the negative for two reasons.

First, the two letters from QBE's third-party claims administrator do not communicate the requisite unequivocal written notice of disclaimer, and therefore do not constitute disclaimers of coverage. As the majority concedes, both letters contained "contradictory and confusing language" (majority mem at 1107). Language such as this simply cannot serve to properly advise an insured of his rights and remedies under the policy.

The January 31, 2008 letter expressly stated that QBE was making a "reservation of rights" with respect to the assault and battery exclusion; but the same letter asserted that QBE *"will not be* defending or indemnifying [Jinx-Proof] . . . for the assault and battery allegations" (emphasis added). Moreover, the statement that QBE would not be defending Jinx-Proof with respect to the assault and battery allegations had no possible justification; QBE had no right to refuse to *defend* (as opposed to indemnify) Jinx-Proof for the assault and battery allegations (*see Fieldston Prop. Owners Assn., Inc. v Hermitage Ins. Co., Inc.*, 16 NY3d 257, 264-265 [2011]).

The February 26, 2008 letter was even more confusing and ambiguous. That letter stated that QBE was defending the matter (thus contradicting the earlier letter), but "under **strict reservation of rights** for allegations of Assault and Battery." It then went on to state that any awards "stemming from allegations of Assault and Battery *will not be* covered" (emphasis added).

These ambiguities must be construed in the insured's favor, and therefore these letters cannot be treated as a disclaimer, which must be "unequivocal" and "unambiguous" (*Norfolk & Dedham Mut. Fire Ins. Co. v Petrizzi*, 121 AD2d 276, 277 [1st

Dept 1986], *lv denied* 68 NY2d 611 [1986]; *accord United States Fid. & Guar. Co. v Treadwell Corp.*, 58 F Supp 2d 77, 90 [SD NY 1999]; *Tudor Ins. Co. v McKenna Assoc.*, 2005 WL 1138386, 2005 US Dist LEXIS 9046 [SD NY, May 12, 2005, No. 01 CIV 0115 CBM]). A letter that describes itself as a "reservation of rights letter" but contains expressly contradictory language suggesting disclaimer is not a valid disclaimer. In fact, the February 26, 2008 letter expressly describes the earlier letter as a reservation of rights letter.

It is well-established that "[a] reservation of rights letter has no relevance to the question whether the insurer has timely sent a notice of disclaimer of liability or denial of coverage" (*Hartford Ins. Co. v County of Nassau*, 46 NY2d 1028, 1029 [1979], *rearg denied* 47 NY2d 951 [1979]), meaning, quite simply, that "a reservation of rights does not qualify as a timely disclaimer" (*Henner v Everdry Mktg. & Mgt., Inc.*, 74 AD3d 1776, 1778 [4th Dept 2010]); "a written reservation of an insurer is not a substitute for the required notice of disclaimer" (*Allcity Ins. Co. v Pioneer Ins. Co.*, 194 AD2d 424, 424 [1st Dept 1993]). The reason for this is fundamental; a reservation of rights does just that, reserving arguments for another day, whereas a disclaimer is required to "apprise the claimant with a high degree of specificity of the ground or grounds on which the disclaimer is predicated" (*General Acc. Ins. Group v Cirucci*, 46 NY2d 862, 864 [1979]).

Consequently, the letters were not disclaimers, and since QBE does not allege any separate timely disclaimer with respect to assault and battery allegations, it did not fulfill the requirements of Insurance Law § 3420 (d) (2) (requiring that a liability insurer give the insured a written notice of a disclaimer of liability or denial of coverage "as soon as is reasonably possible"). "[A] timely disclaimer pursuant to Insurance Law § 3420 (d) is required when a claim falls within the coverage terms but is denied based on a policy exclusion" (*Markevics v Liberty Mut. Ins. Co.*, 97 NY2d 646, 648-649 [2001]), as is the case here. For this reason alone, I would reverse.

But there is a second reason, just as fundamental. QBE was required to advise Jinx-Proof that, under the *Goldfarb* rule, it was entitled to defense by an attorney of its own choosing, whose fees were to be paid by QBE. Where, as here, a lawyer's "duty to the insured would require that he defeat liability on any ground," whereas his or her obligation to the insurer would require defeating liability only with respect to theories that

"would render the insurer liable," it is well established that "the insured must be free to choose his own counsel whose reasonable fee is to be paid by the insurer" (*Public Serv. Mut. Ins. Co. v Goldfarb*, 53 NY2d 392, 401 n [1981]; *see Prashker v United States Guar. Co.*, 1 NY2d 584, 593 [1956]). This is simply black letter law (*see e.g. New York Mar. & Gen. Ins. Co. v Lafarge N. Am., Inc.*, 599 F3d 102, 124-125 [2d Cir 2010]; *New York State Urban Dev. Corp. v VSL Corp.*, 738 F2d 61, 65 [2d Cir 1984]; *Executive Risk Indem. Inc. v Icon Tit. Agency, LLC*, 739 F Supp 2d 446, 450-451 [SD NY 2010]; *First Jeffersonian Assoc. v Insurance Co. of N. Am.*, 262 AD2d 133, 134 [1st Dept 1999]; *69th St. & 2nd Ave. Garage Assoc. v Ticor Tit. Guar. Co.*, 207 AD2d 225, 227 [1st Dept 1995]; *Bryan v State-Wide Ins. Co.*, 144 AD2d 325, 327 [2d Dept 1988]).

Any other rule would cast any attorney in an ethically untenable role—defending a lawsuit in the name of an insured while attempting to defeat the very coverage upon which the insured is relying. Here, QBE cannot go forward in the lawsuit to defeat the very claims for which it would be required to indemnify the insured and then seek a declaration that it is no longer required to defend its insured because the only claims remaining are not covered under the policy.

Moreover, it is beyond debate that, in such situations, the insurer has an affirmative obligation to advise the insured of his right to independent counsel paid for by the insurer (*see Elacqua v Physicians' Reciprocal Insurers*, 21 AD3d 702, 707 [3d Dept 2005]). Indeed, the Third Department has gone so far as to hold that an insurer commits a deceptive business practice, under General Business Law § 349, if it fails to advise its insured that it is entitled to retain independent counsel (*Elacqua v Physicians' Reciprocal Insurers*, 52 AD3d 886, 888-889 [3d Dept 2008]).

Here, by failing to communicate to Jinx-Proof that it was entitled to an attorney of its own choosing paid for by the insurer, QBE breached its duty to its insured in such a way as to estop it from disclaiming. An insurer that arranges matters so that it exclusively controls its insured's defense, preventing the insured from retaining its own counsel at the insurer's expense, and possibly acting directly against the interests of the insured, cannot now assert that the policy does not cover the claim.

Judges GRAFFEO, READ, SMITH, RIVERA and ABDUS-SALAAM concur; Judge PIGOTT dissents and votes to reverse in an opinion in which Chief Judge LIPPMAN concurs.

Order affirmed, with costs, and certified question answered in the affirmative, in a memorandum.