14-2773-cv
*Catlin Specialty Insurance Co. v. QA3 Financial Corp.*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day November, of two thousand fifteen.

Present:

> DEBRA ANN LIVINGSTON ,
> CHRISTOPHER F. DRONEY,
> *Circuit Judges*,
> ANALISA TORRES
> *District Judge*.*

---

CATLIN SPECIALTY INSURANCE CO.

    *Plaintiff-Counter-Defendant-Appellee*,

    v.                                 14-2773-cv

QA3 FINANCIAL CORP.

    *Defendant-Counter-Claimant-Appellant*

---

For Plaintiff-Appellee:        Jonathan Harwood, TRAUB LIEBERMAN STRAUS & SHREWSBERRY, LLP, Hawthorne, N.Y.

---

* The Honorable Analisa Torres of the United States District Court for the Southern District of New York, sitting by designation.

1

For Defendant-Appellant: Andrew Bourne, BOURNE & ZAKHEIM LLP, New York, N.Y.

**UPON DUE CONSIDERATION WHEREOF it is hereby ORDERED, ADJUDGED, AND DECREED** that the judgments of the district court are **AFFIRMED**.

On November 23, 2010, Catlin Specialty Insurance Company ("Catlin"), the Appellee in this case, brought an action in the United States District Court for the Southern District of New York seeking a declaratory judgment as to the meaning of its insurance contract with QA3 Financial Corporation ("QA3"), the Appellant. The parties agree that the pertinent insurance contract in this diversity action is governed by New York law. In particular, Catlin asked the court to determine whether, under the Policy's Amended Definition of Securities Endorsement (the "Endorsement"), the aggregate limit for claims arising out of all private placements was $1,000,000, or whether, as QA3 contends, this limit applied only to specific, enumerated private placements, and a limit of $7,500,000 applied to private placements more generally. QA3 filed, *inter alia*, a counterclaim for bad faith, which the district court (Furman, *J.*) subsequently dismissed on December 19, 2012. After a jury trial, during which QA3 and Catlin presented evidence as to the intended meaning of the Endorsement, the jury found for Catlin. The district court (Schofield, *J.*) subsequently denied QA3's motion for a new trial on the basis of erroneous jury instructions. QA3 now appeals from the district court's dismissal of its counterclaim and from the district court's denial of its motion for a new trial. As it will prove clearer to do so, we begin by discussing the motion for a new trial and then proceed to the motion to dismiss. We assume the parties' familiarity with the underlying facts and procedural history in this case.

This Court reviews a claim of error in jury instructions *de novo*, "reversing only where, viewing the charge as a whole, there was a prejudicial error." *Terra Firma Invs. (GP) 2 Ltd. v.*

2

*Citigroup Inc.*, 716 F.3d 296, 299 (2d Cir. 2013) (quoting *United States v. Quattrone,* 441 F.3d 153, 177 (2d Cir. 2006)). "A jury instruction is erroneous 'if the instruction misleads the jury as to the proper legal standard, or it does not adequately inform the jury of the law,' but such an error will not be grounds for reversal unless 'taken as a whole, the jury instructions gave a misleading impression or inadequate understanding of the law.'" *Owen v. Thermatool Corp.*, 155 F.3d 137, 139 (2d Cir. 1998) (quoting *BAII Banking Corp. v. UPG, Inc.,* 985 F.2d 685, 696 (2d Cir. 1993)). "Absent fundamental error, we are loath to overturn a jury verdict in a civil case." *Terra Firma*, 716 F.3d at 298.

QA3 argues that the district court committed prejudicial error in two ways: first, by refusing to instruct the jury on *contra proferentem*, a rule of contract interpretation, generally, and insurance contract interpretation, specifically, *see Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 43 (2d Cir. 2006), and second, in refusing to instruct the jury that Catlin had to meet the heavy burden articulated in *Seaboard Surety Co. v. Gillette Co.*, 476 N.E.2d 272 (N.Y. 1984), when an insurer seeks to invoke an exclusion, *id.* at 275 ("[B]efore an insurance company is permitted to avoid policy coverage, it must satisfy the burden which it bears of establishing that the exclusions or exemptions apply in the particular case, and that they are subject to no other reasonable interpretation." (citations omitted)). We find both arguments unavailing.

First, assuming, *arguendo*, that QA3 is correct that *contra proferentem*, as a canon of textual or legal construction, is applicable to the jury's factual analysis of extrinsic evidence, the judge's refusal to provide QA3's instruction to the jury did not mislead the jury as to the proper legal standard. Many courts have articulated the contours of *contra proferentem*, or the "contra-insurer rule," *see McCostis v. Home Ins. Co. of Ind.*, 31 F.3d 110, 113 (2d Cir. 1994), in

3

different terms, so we assume, for this analysis, that the text requested by QA3 in its proposed instruction accurately describes the canon: "Where an ambiguity in an insurance policy cannot be resolved by examining extrinsic evidence of the parties' intent, you must construe the ambiguous language in accordance with the rule of *contra proferentem*, a rule of contract construction which, in the insurance context, requires you to construe the contract against the drafter." J.A. 848. The district court refused to give QA3's requested instruction to the jury, but it nevertheless instructed them that Catlin bore the burden of proving by a "preponderance of the evidence," J.A. 1959, that Catlin's "interpretation regarding language limiting coverage [was] the correct one," J.A. 1964. The court further instructed that if the jury found that the evidence "didn't tip [the scale] either way . . . then [it] must decide [this] issue against [Catlin]." J.A. 1959. When determining if an instruction misled a jury as to the proper legal standard, "the particular words used in a jury instruction may (depending on the circumstances) be less important than the meaning or substance of the charge as a whole." *Owen*, 155 F.3d at 139 n.1. Here, the jury understood that, were it to find that Catlin had not met its burden of proving its interpretation was the correct one, the jury would have to ultimately resolve the presumptively inconclusive extrinsic evidence in favor of QA3. Assuming *contra proferentem* applied, then, the jury understood the essence of the rule: that if it found the evidence inconclusive, it should find in favor of the Appellant. We thus discern no error in the court's instruction, even assuming the legal correctness of QA3's request.

As to the second instruction, even if we assume, again *arguendo*, that the burden articulated in *Seaboard Surety* is a heightened one (beyond the general civil burden of a preponderance of the evidence) and that it applies not simply when a court determines the meaning of a contract as a matter of law, but also when a jury analyzes extrinsic evidence to discern the parties' intent as a matter of fact, the burden would be inapplicable here. QA3 concedes that the

4

Endorsement is not formally an exclusion, but points to New York case law to suggest that New York considers any limiting language concerning "the nature and extent of coverage" to nevertheless constitute a functional exclusion. Appellant Br. at 33 (quoting *Elacqua v. Physicians' Reciprocal Insurers*, 21 A.D.3d 702, 705 (N.Y. App. Div. 2005) (quoting *Jefferson Ins. Co. of N.Y. v. Travelers Indem. Co.*, 92 N.Y.2d 363, 371 (N.Y. 1998)). No case QA3 cites in fact holds as much, including *Elacqua*, but we need not speculate as to New York law here: New York's highest court recently affirmed that New York law does *not* construe language limiting the amount or extent of liability as an exclusion. *See Roman Catholic Diocese of Brooklyn v. Nat'l Union Fire Ins. Co. of Pittsburgh,* 21 N.Y.3d 139, 147 (2013) ("[T]he defenses at issue do not relate to an argument of exclusion or disclaimer, but rather, focus on the extent of alleged liability under the various policies. Put simply, they are not subject to the notice requirements of section 3420(d) [regarding exclusions] because they 'do[ ] not bar coverage or implicate policy exclusions.'") (quoting *Pav-Lak Indus., Inc. v Arch Ins. Co.*, 56 A.D.3d 287, 288 ((N.Y. App. Div. 2008)). Thus, assuming the *Seaboard Surety* standard to work precisely as QA3 argues, it would nevertheless not have been proper for the district court to instruct the jury that it was applicable: a limitation of liability is *not* an exclusion, and New York law does not permit us to find otherwise.

Finally, in affirming the district court's denial for a motion for a new trial, we have *a fortiori* affirmed the district court's dismissal of the bad faith counterclaim. Assuming, *arguendo*, that QA3 sufficiently alleged the existence of a settlement offer, *see Pavia v. State Farm Mut. Auto. Ins. Co.*, 82 N.Y.2d 445, 454 (N.Y. 1993) ("Naturally, proof that a demand for settlement was made is a prerequisite to a bad-faith action for failure to settle."), QA3 nevertheless concedes that it alleged, at best, a settlement offer within the $7,500,000, rather than the $1,000,000, limit of liability. *See* Appellant Reply Br. at 21 ("Catlin is correct in asserting that QA3 did not make a

settlement demand within the $1,000,000 limit of liability that Catlin believed was applicable.").

Insofar, then, as Catlin refused to settle, it did so in reliance on its interpretation of the Endorsement. "It has been recognized that bad faith cannot be established when the insurer has an arguable basis for denying coverage." *Redcross v. Aetna Cas. & Sur. Co.,* 260 A.D.2d 908, 913 (N.Y. App. Div. 1999); *see also Zurich Ins. Co. v. Texasgulf, Inc.,* 233 A.D.2d 180, 181 (N.Y. App. Div. 1996); *Dawn Frosted Meats, Inc. v. Ins. Co. of N. Am.*, 99 A.D.2d 448, 448 (N.Y. App. Div. 1984). Given that we have affirmed the denial of QA3's motion for a new trial, the jury determination that Catlin's interpretation was in fact *correct* would preclude QA3 from alleging that this interpretation was less than *arguable*. As such, we affirm the district court's dismissal of the bad faith counterclaim.

Accordingly, we **AFFIRM** the judgments of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk